IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IP INNOVATION LLC, and TECHNOLOGY LICENSING CORPORATION, <br><br> Plaintiffs, <br> vs. <br><br> MITSUBISHI ELECTRIC CORPORATION, VIZIO, INC. (f/k/a V, Inc.), and MICROSOFT CORPORATION <br><br> Defendants. | No. 1:08-cv-00393 <br><br> Honorable Samuel Der-Yeghiayan |

### DEFENDANT VIZIO, INC.'S *AMENDED* ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT, COUNTERCLAIMS AND DEMAND FOR TRIAL BY JURY

VIZIO, Inc. ("VIZIO"), hereby amends its answer in response to the Second Amended Complaint of Plaintiffs, IP Innovation LLC and Technology Licensing Corporation (hereinafter, collectively referred to as "Plaintiffs"), filed on November 4, 2008 as follows:

### PARTIES, JURISDICTION AND VENUE

1.   VIZIO admits that Plaintiffs purport to state a claim for patent infringement arising under the patent laws of the United States, including Title 35 of the United States Code, section 271. VIZIO further admits that jurisdiction is proper in this Court. VIZIO otherwise denies the allegations in paragraph 1.

2.   VIZIO is without sufficient information to admit or deny the allegations of paragraph 2, and on that basis, VIZIO denies all allegations therein.

3.   VIZIO is without sufficient information to admit or deny the allegations of paragraph 3, and on that basis, VIZIO denies all allegations therein.

1

4.  VIZIO admits that the '964 Patent is entitled "Spatial Scan Replication Circuit" and on its face lists March 22, 2005 as its issue date. VIZIO admits that the '929 Patent is entitled "Spatial Scan Replication Circuit" and on its face lists June 3, 2008 as its issue date. VIZIO is without sufficient information to admit or deny whether IP Innovation LLC and Technology Licensing Corporation are the exclusive owners of the '964, and '929 Patents, and on that basis, VIZIO denies the same. Except as expressly admitted herein, VIZIO denies all allegations of paragraph 4.

5.  VIZIO admits the allegations of paragraph 5.

6.  VIZIO is without sufficient information to admit or deny the allegations of paragraph 6, and on that basis, VIZIO denies all allegations therein.

7.  VIZIO denies each and every allegation set forth in paragraph 7 with respect to any activities of VIZIO. VIZIO is without sufficient information to admit or deny any of the allegations of paragraph 7 with respect to other defendants named in the Amended Complaint, and on that basis, denies the same.

8.  VIZIO admits the allegations of paragraph 8.

## PATENT INFRINGEMENT

9.  VIZIO denies each and every allegation set forth in paragraph 9 with respect to any activities of VIZIO. VIZIO is without sufficient information to admit or deny any of the allegations of paragraph 9 with respect to other defendants named in the Amended Complaint, and on that basis, denies the same.

10. VIZIO denies each and every allegation set forth in paragraph 10 with respect to VIZIO. VIZIO is without sufficient information to admit or deny any of the allegations of

paragraph 10 with respect to any other defendant named in the Amended Complaint, and on that basis, denies the same.

11.   VIZIO denies each and every allegation set forth in paragraph 11 with respect to any activities of VIZIO. VIZIO is without sufficient information to admit or deny any of the allegations of paragraph 11 with respect to any other defendant named in the Amended Complaint, and on that basis, denies the same.

12.   VIZIO denies each and every allegation set forth in paragraph 12 with respect to any activities of VIZIO. VIZIO is without sufficient information to admit or deny any of the allegations of paragraph 12 with respect to any other defendant named in the Amended Complaint, and on that basis, denies the same.

Further answering, VIZIO denies that Plaintiffs are entitled to the relief for which they pray, and denies that Plaintiffs are entitled to any relief on their Amended Complaint. Further answering, VIZIO denies all of the foundations, premises or bases for the allegations made by Plaintiffs except as expressly admitted herein.

## VIZIO'S AFFIRMATIVE DEFENSES

All possible affirmative defenses of VIZIO may not have been alleged herein insofar as sufficient facts were not available after reasonable inquiry. Accordingly, VIZIO reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and reserves the right to amend this answer to allege additional affirmative defenses as subsequent investigation warrants. Defendant VIZIO sets forth the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Second Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Non-Infringement)

VIZIO has not and does not (a) literally infringe, (b) infringe under the doctrine of equivalents, (c) contributorily infringe, or (d) induce infringement of any valid and enforceable claim of the '964 or '929 Patents.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity)

The '964 and '929 Patents are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including, *inter alia*, §§ 101, 102, 103 and 112. VIZIO reserves the right to assert additional grounds for the invalidity of the '964 and '929 Patents if it discovers such grounds during the course of the litigation.

## FOURTH AFFIRMATIVE DEFENSE
### (Unenforceability Due to Inequitable Conduct)

1. On information and belief, the claims of the '964, and '929 Patents are unenforceable. Plaintiffs, their predecessors-in-interest, the patent inventor(s), and/or the attorneys or other individuals involved in the prosecution of the '964 and '929 Patents and in the prosecution and/or reexamination of two related patents (U.S. Patent Nos. 5,424,780 ("the '780 Patent") and 6,529,637 ("the '637 Patent")) engaged in inequitable conduct before the United States Patent and Trademark Office (PTO). With particularity the following circumstances constitute inequitable conduct:

2. The inventor of the patents, J. Carl Cooper, and his attorneys intentionally failed to disclose material facts and intentionally deceived the PTO during prosecution of the '780 Patent in violation of their duty of candor. Cooper and his attorneys failed to properly designate the '780 Patent as a continuation-in-part of an abandoned patent application, Ser. No. 07/355,461 ("the '461 Application"), which was filed in 1989.

3.      In violation of their duty of candor, Cooper and his attorneys claimed that the '780 Patent drew priority from the '461 Application without mentioning that the application for the '780 Patent, in fact, contained new matter that had been previously rejected by the PTO during examination of the '461 Application.

4.      Under PTO rules, Cooper and his attorneys should have designated the application which grew into the '780 Patent as a continuation-in-part, not a continuation. Consequently, Cooper and his attorneys obtained, through fraud and manipulation, the '780 Patent with a priority date derived from the original filing of the '461 Application over new matter that was not initially disclosed in the original '461 Application.

5.      More specifically, the '461 Application, as filed, made no mention of printers. On March 12, 1990, Cooper filed an Amendment to the '461 Application that specifically added language directed to printers to the Claims and to the Specification. In an October 22, 1991 Office Action, the PTO Examiner rejected the Amendment because the disclosure with regard to printers constituted new matter, in contravention of PTO rules.

6.      On December 11, 1991, Cooper responded to the Office Action, arguing that the printer language was not new matter. On April 9, 1992, the PTO Examiner issued a Second Office Action, rejecting Cooper's arguments. Cooper petitioned the PTO Commissioner on May 26, 1992 to overturn the Examiner's decision to treat the printer language as new matter. On June 22, 1992, Cooper further amended the '461 Application, adding the description of newly added Figure 13 to the Specification, which related to the new printer matter. On May 10, 1993, the PTO Commissioner dismissed Cooper's petition without deciding it on the merits.

7.      The PTO Examiner issued a Final Rejection on June 2, 1993, specifically objecting to Figure 13, along with the previously added references to printers in the Specification

and the Claims, concluding, for the final time, that this all constituted new matter. On June 28, 1993, Cooper filed a further amendment to remove the Claims that were specifically directed to printers and to remove Figure 13, indicating that this would allow a petition to the PTO Commissioner to be decided regarding the new matter issue. However, Cooper did not remove the new matter specifically directed to printers that he had added to the Specification on March 12, 1990, which was a subject of the Examiner's objections.

8. Cooper then filed a second petition to the PTO Commissioner on July 23, 1993 and argued that the '461 Application did not contain new matter. On September 13, 1993, Cooper filed a new application, Ser. No. 09/119,610 ("the '610 Application") and designated it as a "continuation" of the '461 Application in order to claim the priority date of the '461 Application. A new Examiner was assigned to the '610 Application, which eventually issued as the '780 Patent, and included in the Specification the printer specific language that had been previously objected to by the '461 Application Examiner.

9. On Jan. 31, 1994, Cooper filed a notice of abandonment with respect to the '461 Application. On June 2, 1994, the PTO Commissioner denied as moot his petition since Cooper had cancelled the claims specifically directed to printers and deleted Figure 13 and the corresponding description of Figure 13 from the Specification. The Commissioner did not address and perhaps did not notice that new matter directed to printers still remained in the Specification to which the '461 Application Examiner had objected.

10. On June 8, 1994, the '610 Examiner issued a non-final office action rejecting for various reasons Cooper's claims. The Examiner did not mention the issue of the new matter directed at printers that remained in the Specification, reasonably expecting, as the

Commissioner did, that Cooper had already removed all the objectionable material from the '461 Application.

11.     In violation of their duty of candor, neither Cooper nor his attorneys brought this issue to the Examiner's attention. Nor did they bring the oversight to the attention of the Commissioner.

12.     Cooper and his attorneys were both aware that the printer matter contained in the '610 Application had conclusively been deemed "new matter" by the '610 Examiner. Through a careful game of manipulation and obfuscation in direct violation of their duty to be candid, Cooper and his attorneys succeeded in having the '780 Patent issue as a continuation of the '461 Application with the printer specific language in the Specification. The intent to deceive by Cooper and his attorneys is evident in the fact that they abandoned the '461 Application when they were unable to obtain a patent that included the printer specific language. Further, they removed the Claims and figures that contained printer specific language to obscure the fact the '461 Application still contained objectionable printer matter in its Specification. They, then, filed the '610 Application, claiming that it was a continuation, not a continuation-in-part, of the '461 Application without disclosing to the new Examiner, in violation of their duty of candor, that the printer language in the Specification of the '461 Application had been deemed objectionable. The Examiner of the '610 Application could reasonably rely upon Cooper's and his attorney's failure to disclose this fact to form a belief that all the objectionable new matter in the '461 Application had been removed, which permitted the Examiner to allow the '610 Application to issue as the '780 Patent, a continuation of the '461 Application. Cooper and his attorneys thereby succeeded, through fraud, in obtaining the '780 Patent. It is, thus, unenforceable. The '637, '964 and '929 Patents are also unenforceable based on the doctrine of infectious unenforceability

because the claims of those patents have immediate and necessary relation to the inequitable conduct committed by Cooper and his attorneys.

13.　　The foregoing facts of paragraphs 13-26 set forth an independent basis for holding that inequitable conduct was committed during the reexamination of the '780 Patent, the prosecution of the '637 Patent, the prosecution of the '964 Patent, and the prosecution of the '929 Patent. Since all the patents in this case derive from the fraudulently obtained '780 Patent, none should be enforced on the grounds of Cooper's and his attorneys' inequitable conduct.

14.　　The '780 Patent and its child patents are also unenforceable because Cooper and his attorneys engaged in inequitable conduct during the reexamination of the '780 Patent and during the examination of the '637 Patent. Their conduct was intentional and in violation of their duty of candor. The information was material in that it may have affected the issuance of '780 Patent, during reexamination, and the '637 Patent. Consequently, the patents are unenforceable.

15.　　On July 3, 1999, Cooper filed a request for reexamination of the '780 Patent, which was merged with another request for reexamination filed by a third-party. In the merged reexamination, on May 16, 2000, the Examiner rejected most of the claims based on an earlier patent, U.S. Patent No. 4,677,493 ("Shinya"). After Cooper amended the claims twice, on January 16, 2001, the Examiner issued a final rejection of most of the pending claims in reexamination, relying again on Shinya.

16.　　On March 14, 2001, Cooper submitted a First Declaration in which he attempted to distinguish Shinya from the claims of the '780 Patent. Two of Cooper's attorneys met with the Examiner to discuss the Shinya patent. On March 16, 2001, during a fourth interview with the Examiner, the Examiner informed Cooper's counsel that his First Declaration was "not persuasive."

17.     On July 6, 2001, the Examiner issued a revised rejection, again relying on Shinya, among other references. In response, Cooper's counsel submitted a Second Declaration, accompanied by four new "expert" declarations, under 37 C.F.R. § 1.132, from Sheldon L. Epstein, Kevin M. Klughart, Jerry B. Torrance, Jr., and Jan Stoeckenius. Cooper asserted in his Second Declaration that he had "never met or talked with any of these experts prior to my contacting them in [sic] last month to request these declarations."

18.     This statement was intentionally misleading. Neither Cooper, nor anyone on his behalf, disclosed to the Examiner the following material facts: (1) that Cooper paid the "experts" for their testimony; (2) that Cooper had a prior business relationship with one of them (Klughart); and (3) that Cooper and/or his attorneys had played a role in drafting some of the declarations.

19.     The fact that Cooper failed to disclose that he paid the "experts" for their testimony was particularly misleading because Torrance and Epstein said in their declarations that they had been "retained" by Cooper, while Klughart and Stockenius said nothing. At minimum, the declarations leave the impression that Klughart and Stockenius were disinterested declarants. Consequently, the PTO Examiner may have given improper weight to their opinions, rendering the omission material.

20.     Cooper and his attorneys also affirmatively mislead the PTO by claiming that Cooper had no prior relationship with these four men outside of contacting them for their declarations. In fact, Klughart had previously submitted a $210,000 bid to Cooper for reverse engineering a third-party's computer chip. Cooper paid Klughart $3,000 for the bid, but did not reject it. Consequently, the possibility that Cooper would retain and pay Klughart $210,000 remained when he engaged Klughart to render an opinion with regard to the '780 reexamination.

Klughart was not a disinterested "expert," and Cooper intentionally lied to the PTO by claiming that he had no prior relationship with Klughart. The PTO may have improperly relied on Klughart's report, rendering Cooper's lie material.

21.     To distinguish the Shinya reference during prosecution of the '637 Patent, Cooper and his attorneys introduced identical declarations. Cooper and his attorneys' actions during the reexamination of the '780 Patent and the examination of the '637 Patent amount to inequitable conduct.

22.     The application leading to the '964 Patent was filed on May 18, 2000 as a divisional of the '637 Patent, and the '964 Patent issued on March 22, 2005. The Shinya patent was material to claims of the '964 Patent. Cooper and his attorneys were aware of the Shinya patent and knew of its materiality, but they deliberately and fraudulently withheld and concealed the Shinya patent from the examiner during the prosecution of the '964 Patent. On March 7, 2008, the PTO granted a request for reexamination of claim 10 of the '964 Patent, based, in part, on the Shinya patent. This fraudulent and deceptive conduct renders the '964 Patent unenforceable by reason of inequitable conduct.

23.     The fraudulent declarations referenced in paragraphs 17 through 21 pertained to the Shinya patent and were intended to distinguish Cooper's claimed inventions from the Shinya patent. The claims of the '964 Patent bear an immediate and necessary relation to the fraud committed by Cooper and his paid experts and attorneys in connection with the reexamination of the '780 Patent and the prosecution of the '637 Patent and are unenforceable by reason of infectious unenforceability.

24.     The application leading to the '929 Patent was filed on October 1, 2001 as a divisional of the '637 Patent, and the '929 Patent issued on June 3, 2008. The Shinya patent was

material to claims of the '929 Patent. Cooper and his attorneys waited to cite the Shinya patent to the examiner until January 23, 2003, after the fraudulent declarations referenced in paragraphs 17 through 21 had been submitted to the PTO in connection with the pending reexamination of the '780 Patent and the prosecution of the '637 Patent. As a result, Cooper and his attorneys violated their duty of candor by disclosing the reference to the PTO only after submitting false declarations. The claims of the '929 Patent are therefore unenforceable.

25. For the foregoing reasons described in paragraphs 1-24 of this affirmative defense independently and in combination, the '964 Patent, the '929 Patent, and all their child patents are rendered unenforceable on account of the fact that they were obtained by Cooper and his attorneys after numerous violations of their duty of candor, through affirmative misstatements and lies, after systematic and continuing fraud on the PTO, and in disregard for the patent process, which encourages honesty and forthrightness.

26. For the foregoing reasons described in paragraphs 1-24 of this affirmative defense independently and in combination, the '964 Patent, the '929 Patent, and all their child patents are unenforceable under the doctrine of infectious unenforceability because their claims have an immediate and necessary relation to the inequitable conduct committed during prosecution and reexamination of earlier patents.

**FIFTH AFFIRMATIVE DEFENSE**
**(Collateral Estoppel and Res Judicata)**

VIZIO repeats and realleges paragraphs 1-26 of its Fourth Affirmative Defense in their entirety. Plaintiffs are barred by the doctrines of collateral estoppel and res judicata from asserting that the '780 and '637 Patents are enforceable. On October 16, 2008, in an action before this Court (No. 05-CV-5620), Judge Richard A. Posner found that the inventor of the patents, J. Carl Cooper, deliberately mislead the PTO by filing a false declaration during the

reexamination of the '780 Patent and in the prosecution of the '637 Patent. The Court, consequently, held those two patents unenforceable. Because IP and TLC were parties to that action, the doctrine of collateral estoppel bars the parties from asserting the enforceability of those patents. Based on the Oct. 16 ruling, the claims of the '964 and '929 Patents are also unenforceable because the claims of those patents bear necessary and immediate relation to the '780 and '637 Patents and to Cooper's inequitable conduct.

## SIXTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs are time barred under the doctrine of laches to bring this action against VIZIO. Plaintiffs unreasonably delayed in filing this action, and unreasonably delayed in prosecuting the asserted claims, after Plaintiffs knew, or should have known of the alleged infringing acts. In the interim, VIZIO has invested time and money into building its business and goodwill. To allow Plaintiffs to bring an action now after its unreasonable delay would result in material prejudice to VIZIO.

## SEVENTH AFFIRMATIVE DEFENSE
### (Innocent Intent)

VIZIO has engaged in all relevant activities in good faith, thereby precluding Plaintiffs, even if they prevail, from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. § 285

## EIGHTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

By reason of the proceedings in the USPTO and foreign patent offices, during the prosecution of the applications for the '964 and '929 Patents and related applications and the statements, admissions and representations made by the named inventors and/or their attorneys,

Plaintiffs are estopped from asserting any interpretation of the '964 or '929 Patent claims that would cover VIZIO's technology.

**NINTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

Plaintiffs are not entitled to any relief in this action because they have come into this Court with unclean hands.

**TENTH AFFIRMATIVE DEFENSE**
**(Statute of Limitations)**

To the extent Plaintiffs seek damages for alleged infringement more than six years prior to the filing of the present litigation, Plaintiffs' claims are barred by the statute of limitations under 35 U.S.C. § 286. To the extent Plaintiffs allege infringement of additional patents that were not asserted when this suit was filed, Plaintiffs' amendments do not relate back to the original filing under Fed. R. Civ. P. 15(c).

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Notice/Marking)**

Plaintiffs are precluded by 35 U.S.C. § 287 from seeking damages for any alleged infringement prior to providing actual notice of the '964 or '929 Patents to VIZIO.

**TWELFTH AFFIRMATIVE DEFENSE**
**(Express or Implied License/Patent Exhaustion)**

Plaintiffs' claims for patent infringement against VIZIO are precluded in whole or in part (i) to the extent that any allegedly infringing products are supplied, directly or indirectly to VIZIO by an entity or entities having an express or implied license to the '780, '637, '964, and/or '929 Patents including, but not limited to (1) Koninklijke Philips Electronics N.V.; (2) LG Philips LCD Co., Ltd.; and/or, (3) LG Electronics, Inc. and/or (ii) under the doctrine of patent exhaustion.

## COUNTERCLAIMS

VIZIO asserts the following counterclaims against plaintiff and counterclaim-defendant IP Innovation LLC and plaintiff and counterclaim-defendant Technology Licensing Corporation.

## PARTIES

1. VIZIO, Inc. is a corporation organized and existing under the laws of the state of California. VIZIO's principal place of business is at 39 Tesla, Irvine, California 92618-4603.

2. Upon information and belief, IP Innovation LLC, is, as alleged in the Amended Complaint, a corporation organized and existing under the laws of Texas, with its principal place of business at 707 Skokie Boulevard, Suite 600, Northbrook, IL 60062.

3. Upon information and belief, Technology Licensing Corporation is, as alleged in the Amended Complaint, a corporation organized and existing under the laws of Nevada, with its principal place of business at 1000 E. William Street, Suite 204, Carson City, NV 89701.

## JURISDICTION AND VENUE

4. Plaintiffs claim to be the exclusive owners of the '964 and '929 Patents and claim to have the right to sue others for infringement of the '964 and '929 Patents.

5. By virtue of Plaintiffs' suit against VIZIO for the alleged infringement of the '964 and '929 Patents, there exists an actual case or controversy between Plaintiffs and VIZIO, and this Court should now settle the controversy between Plaintiffs and VIZIO by declaring their respective rights with regard to the '964 and '929 Patents and their conduct related thereto.

6. This is an action arising under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. §271 *et seq.*, based on the actual justiciable controversy between IP Innovation LLC and VIZIO and between Technology Licensing Corporation and VIZIO. The counterclaims herein are compulsory under Rule 13(a)

of the Federal Rules of Civil Procedure and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201-2202.

7. Venue properly resides in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## COUNT I

### Declaration of Noninfringement of the '964 and '929 Patents

8. VIZIO realleges each of the allegations set forth in paragraphs 1-7 of its Counterclaims above.

9. VIZIO has not and does not (a) literally infringe, (b) infringe under the doctrine of equivalents, (c) contributorily infringe, or (d) induce infringement of any valid and enforceable claim of the '964 or '929 Patents.

10. Plaintiffs' allegations in the Second Amended Complaint claiming that VIZIO has infringed the '964 Patent and the '929 Patent warrant judicial relief from this Court in the form of a declaration that VIZIO has not infringed and is not infringing the '964 Patent or the '929 Patent.

## COUNT II

### Declaration of Invalidity of the '964 and '929 Patents

11. VIZIO realleges each of the allegations set forth in paragraphs 1-7 of its Counterclaims above and realleges each of the allegations set forth in its Fourth Affirmative Defense above.

12. The '964 and '929 Patents are invalid because they fail to satisfy the conditions for patentability specified in Title 35 of the United States Code, including *inter alia* 35 U.S.C. §§ 101, 102, 103, and/or 112.

13. In the Amended Complaint, Plaintiffs allege that the '964 and '929 Patents were duly and legally issued. VIZIO denies that the '964 Patent and the '929 Patent were duly and legally issued, including because they are invalid for failing to satisfy the conditions for patentability under Title 35 of the United States Code. An actual and justiciable controversy has therefore arisen and VIZIO warrants judicial relief from this Court in the form of a declaration that the '964 Patent and the '929 Patent are invalid.

## COUNT III

### Declaration of Unenforceability of the '964, and '929 Patents

14. VIZIO realleges each of the allegations set forth in paragraphs 1-7 of its Counterclaims above and realleges each of the allegations set forth in its Fourth Affirmative Defense above.

15. VIZIO contends with particularity that inequitable conduct was committed during prosecution and reexamination of the '780 Patent, prosecution of the '637 Patent, and prosecution of the '964 Patent. As a result of this conduct, the '780 Patent, the '637 Patent, and the '964 Patent are unenforceable. The '637, '964, and '929 Patents are also unenforceable based on the doctrine of infectious unenforceability because their claims have an immediate and necessary relation to the inequitable conduct committed during prosecution and reexamination of earlier patents.

## PRAYER FOR RELIEF

WHEREFORE, VIZIO prays for Judgment against Plaintiffs as follows:

(i) That a judgment be entered declaring that VIZIO has not infringed and is not infringing the '964 and '929 Patents;

(ii) That a judgment be entered declaring that the '964 and '929 Patents are invalid;

(iii)    That a judgment be entered declaring that the '964 and '929 Patents are unenforceable;

(iv)    That Plaintiffs' Second Amended Complaint be dismissed with prejudice, and that Plaintiffs take nothing thereby;

(v)    That VIZIO be awarded its reasonable costs and attorneys' fees necessarily incurred in defending and prosecuting this action;

(vi)    That the Court enter judgment that this case is an exceptional case under 35 U.S.C. § 285, and enter a judgment awarding VIZIO its costs and reasonable attorneys' fees;

(vii)    That VIZIO be awarded relief under 28 U.S.C. § 2202; and

(viii)    That the Court grant VIZIO whatever further relief the Court deems just and proper.

DATED this 22nd day of May, 2009.

/s/ *Dana M. Herberholz*
John N. Zarian
Dana M. Herberholz
Zarian Midgley & Johnson PLLC
Suite 250
960 Broadway
Boise, ID 83706
Tel: 208-562-4900
Fax: 208-562-4901
Zarian@zarianmidgley.com
Herberholz@zarianmidgley.com

**DEMAND FOR JURY TRIAL**

VIZIO hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure on all issues properly triable by a jury.

DATED this 22nd day of May, 2009.

        /s/ *Dana M. Herberholz*
        John N. Zarian
        Dana M. Herberholz
        Zarian Midgley & Johnson PLLC
        Suite 250
        960 Broadway
        Boise, ID 83706
        Tel: 208-562-4900
        Fax: 208-562-4901
        Zarian@zarianmidgley.com
        Herberholz@zarianmidgley.com

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 22nd day of May, 2009, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

                                    */s/ Dana M. Herberholz*
                                    Dana M. Herberholz